Sheri L. Kelly, SBN 226993
E-mail: slk@sherikellylaw.com
LAW OFFICE OF SHERI L. KELLY
31 E. Julian St.
San Jose, CA 95112
Telephone: (408) 287-7712
Facsimile: (408) 583-4249

**Attorney for Plaintiff**

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RONALD E. CHINITZ on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALLY BANK, and DOES 1-50,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ronald E. Chinitz, acting individually and on behalf of all others similarly situated, files this class action complaint against Ally Bank (hereinafter "Ally"), Does 1-50, and alleges as follows:

**FACTUAL ALLEGATIONS**

1. Ally is an internet-only bank offering savings products, including certificates of deposit (CDs), online savings accounts, interest checking accounts, money market accounts, mortgages and credit cards. Ally is direct subsidiary of Ally Financial, Inc. (hereinafter "Ally Financial").

2. Ally allows customers to deposit money into and debit money many of Ally's accounts via the Automated Clearing House Network, commonly referred to as the "ACH Network." The ACH Network moves money and information from one bank account to another. The ACH Network moves money via direct deposits and direct payments; recurring and one-time payments; government, consumer and business-to-business transactions; international payments; and payments plus payment-related information. Each year the ACH Network moves more than $41 trillion and 24 billion electronic financial transactions. Ally customers may make ACH transfers to and from Ally's online savings accounts, interest checking accounts, money market accounts, NOW accounts, and CMG accounts.

3. The ACH Network is a batch processing system in which financial institutions accumulate ACH transactions throughout the day for later batch processing, which are transmitted electronically. ACH Network credit and debit transactions process quickly. According to the National Automated Clearing House Association ("NACHA"), which administers and facilitates the private-sector operating rules for ACH payments, settlement, or the transfer of funds from one financial institution to another to complete a transaction for a standard ACH transfer[1], generally occurs one business day after funds are withdrawn from an external account. This timing is applicable to standard ACH transactions involving transfers to and from Ally accounts, i.e., Ally typically receives funds from a standard ACH transfer request one business day after the funds are

---

[1] A "standard ACH transfer" indicates that the customer has not requested expedited processing.

withdrawn from another financial institution.

4. Even though Ally typically receives funds from standard ACH transfers *one business day* after they are withdrawn from an external account, Ally does not start paying interest on those funds for the customers' benefit until, at a minimum, *two business days* after the funds are withdrawn from that financial institution.

5. To illustrate, the chart below depicts the timing of a typical standard ACH transfer request to move funds via ACH from an external account to an Ally account, from the initial request to final settlement. It shows when funds are received by Ally, when funds are posted to the associated Ally account, and shows that Ally fails to start paying interest on funds beginning the day Ally receives those funds:

| Sunday | Monday | Tuesday | Weds. | Thurs. | Friday | Saturday |
|---|---|---|---|---|---|---|
|  |  |  | External ACH transfer requested by Ally customer | Funds withdrawn by Ally from external account | Holiday | Weekend |
| Weekend | Funds received by Ally; Ally fails to start accruing interest on these funds | Funds posted to Ally account; interest starts to accrue |  |  |  |  |

6. Ally's failure to pay interest on funds it receives from standard ACH transfer requests for its customers' benefit starting from the day it receives those funds is unlawful, and forms the basis of this action. As a result of these unlawful actions, Ally has unjustly retained millions of dollars in unpaid interest and profits that should be returned to its customers.

**JURISDICTION**

7. This Court has jurisdiction over Plaintiff's Expedited Funds Availability Act ("EFAA") claim, 12 U.S.C. § 4005(a), pursuant to 28 U.S.C. § 1331.

8. This Court also has jurisdiction over this action under the Class Action Fairness

2
CLASS ACTION COMPLAINT

1  Act of 2005, 28 U.S.C. §§ 1332(d)(2) and (6), because the aggregate claims of the putative Class
2  members exceed $5 million, exclusive of interest and costs, and because at least one Plaintiff is a
3  citizen of a different state than the Defendants.

4    9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant
5  to 28 U.S.C. § 1367(a).  Plaintiff's state law claims arise out of the same transactions and
6  occurrences as their EFAA claim – specifically, all claims arise out of Ally's failure to pay interest
7  on funds it receives from standard ACH transfers the day it receives those funds – and are so
8  related to Plaintiff's EFAA claims that they form part of the same case or controversy.

**VENUE**

10    10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Ally is a
11  resident of the Northern District of California within the meaning of Sections 1391 (c)(2) and (d).
12  Ally's contacts with the Northern District of California are sufficient to subject it to personal
13  jurisdiction as if this District were a separate State.  Ally is a foreign corporation authorized to
14  conduct business in this District, is doing business in this District and has registered with the
15  California Secretary of State, does sufficient business in this District, has sufficient minimum
16  contacts with this District, or otherwise intentionally availed itself of the Northern District of
17  California's consumer market through the promotion, marketing, and sale of its investment
18  products.  Accordingly, this purposeful availment renders the exercise of jurisdiction by this Court
19  over Ally permissible under traditional notions of fair play and substantial justice.

20    11. Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because a
21  substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.
22  Plaintiff resides in this District and opened an Ally Online Savings account in this District.  In this
23  District, Plaintiff initiated standard ACH transfer requests from Ally, whereby funds from
24  Plaintiff's external accounts were transferred to his Ally Online Savings account.  Ally did not pay
25  interest on these funds starting the day it received these funds.

**INTRADISTRICT ASSIGNMENT**

27    12. Under Local Rules 3-5(b) and 3-2(c) and (e), this action shall be assigned by the
28  Clerk to the San Jose division of this Court, because a substantial part of the events or omissions

which give rise to Plaintiff's claim occurred in Santa Cruz County.

## PARTIES

13.     **Plaintiff Ronald E. Chinitz** is an individual, and has been a resident of Santa Cruz County, California at all times relevant to this Complaint.

14.     **Defendant Ally Bank ("Ally")** is a Utah chartered online bank and an indirect, wholly-owned subsidiary of Ally Financial, Inc. (hereinafter "Ally Financial"), a bank holding company. Ally became a member of the Federal Reserve System in March 2016. Ally offers a variety of deposit and other banking products in California and nationwide, with total assets of $123.5 billion and deposits of $78.9 billion as of December 31, 2016. Ally does not have a retail branch network but, instead, obtains its deposits through online and other direct banking as well as through deposit brokers. Ally's headquarters are located in Midvale, Utah, and Ally Financial's headquarters are located in Detroit, Michigan. Ally contains 75% of Ally Financial's total assets as of December 31, 2016.

## FACTS AS TO PLAINTIFF RONALD E. CHINITZ

15.     Chinitz opened an Ally Online Savings account with an interest rate of 1.15% APY in July 2017. On July 18, 2017, Chinitz initiated an ACH standard transfer with Ally, directing Ally to deposit $800 into his Ally Online Savings account by debiting his Bank of the West checking account in the same amount. Ally withdrew $800 from Chinitz' Bank of the West account on July 19. Ally received these funds on July 20. Ally did not start paying interest on Chinitz' $800 deposit, or post it to Chinitz' Online Savings account, until July 21. Over the phone, an Ally representative informed Chinitz that Ally posts, and starts paying interest on, ACH deposits days after Ally actually receives those deposits.

16.     On August 18, 2017, Chinitz initiated another ACH standard transfer with Ally, directing Ally to deposit $1,000 into his Ally Online Savings account by debiting his Bank of the West checking account in the same amount. Ally withdrew $1000 from Chinitz' Bank of the West account on August 21. Ally received these funds on August 22. Ally did not start paying interest on the $1000 deposit, or post it to Chinitz' Online Savings account, until August 23.

**FACTS COMMON TO THE CLASSES**

17. Each and every Class Member in this litigation has opened an interest-bearing Ally account that allows the Class Members to transfer money to and from that account via ACH transfer. Members of the Class have all initiated one or more standard ACH transfer requests, directing that funds from an external account be deposited into their interest-bearing Ally account. For each member of the Class, Ally has received funds via ACH transfer intended for deposit into the Class Members' interest-bearing Ally accounts at least one business day before Ally started accruing interest on the funds Ally received on the Class Members' behalf.

**FACTS SUPPORTING EQUITABLE TOLLING**

18. Plaintiff's claims are timely. To the extent that any Class Members' claims accrued outside the applicable statute of limitations, these claims are subject to equitable tolling.

19. Class Members' claims are subject to equitable tolling because they could not, despite the exercise of due diligence, have discovered the underlying basis for their claims against Ally. In none of its marketing materials nor on its website did Ally ever explicitly or implicitly inform the Class Members it received funds intended for deposit into the Class Members' interest-bearing Ally accounts one or more business days before Ally started accruing interest on those funds for the Class Members' benefit. Any delay by Plaintiff or the Class in raising claims against Ally was, therefore, excusable.

20. Due to the undisclosed nature of Ally's scheme to generate illegitimate profits, Class Members whose claims accrued outside the statute of limitations did not possess sufficient information or the requisite expertise to enable them to discover the true nature of Ally's scheme.

21. The Court should excuse the delay of any Class Members whose claims arose outside the relevant statute of limitations because they did not and could not discover Defendants' wrongful conduct absent specialized knowledge or assistance of counsel. As such, it would be inequitable to apply the statutes of limitations so as to preclude any Class Member's claims.

**CLASS ALLEGATIONS**

22. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality,

adequacy, predominance, and superiority requirements of Rule 23(a)(1)-(4) and (b)(3).

23. Plaintiff Ronald E. Chinitz brings this action on behalf of a National Class (the "Class" or "Class Members"), defined as all persons who, within the applicable statute of limitations, had an interest-bearing Ally account in their name and initiated one or more ACH transfers, directing that funds from an external account be deposited into their interest-bearing Ally account, and where Ally received the funds one or more business days before Ally started accruing interest on the funds for the Class Members' benefit.

24. Excluded from the Class are defendants, their respective parents, subsidiaries, affiliates, officers, employees and directors, as well as any entity in which they have a controlling interest, counsel for Plaintiffs, any judicial officer presiding over this action, and the members of his or her immediate family and judicial staff.

25. Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

26. The members of the Class are so numerous that joinder is impractical. The Class is believed to consist of hundreds of thousands of members, whose identities are within the exclusive knowledge of and can only be ascertained by resort to the records of Ally.

27. There are questions of law and fact common to Plaintiff and the Class that predominate over questions affecting individual Class Members. These common questions include:

   a. Whether Ally typically receives standard ACH transfers one or more days before it begins accruing interest;

   b. Whether Ally violated the Expedited Funds Availability Act ("EFAA"), 12 U.S.C. § 4005(a) by failing to pay interest on funds it receives via ACH transfer starting the business day it receives those funds;

   c. Whether Ally was unjustly enriched to Plaintiff and the Class Members' detriment by failing to pay interest on funds it receives via ACH transfer starting the business day it receives those funds;

   d. Whether Plaintiff and the Class are entitled to damages as a result of Ally's

                conduct;

        e.    Whether Plaintiff and the Class are entitled to the equitable remedies of restitution and an injunction as a result of Ally's conduct.

28.    Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff, like all Class Members, had an interest-bearing Ally account in his name and initiated one or more ACH transfers, directing that funds from an external account be deposited into his interest-bearing Ally account, and Ally received these funds one or more business days before Ally started accruing interest on the funds for Plaintiff's benefit.

29.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of complex litigation and consumer class actions. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

30.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each Class Member's claim is very small relative to the complexity of the litigation, and due to the financial resources of Defendant, Class Members cannot realistically afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, members of the Class have no realistic likelihood of recovering their damages, and the wrongful practices alleged herein will continue unabated.

31.    Even if members of the Class could afford to pursue individual litigation, individualized litigation would significantly increase the delay, burden, and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. In contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court. Thus, a class action will allow redress for many persons whose claims would otherwise be too small to litigate individually. There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF THE EXPEDITED FUNDS AVAILABILITY ACT ("EFAA"), 12 U.S.C. § 4005(a)**

32. Plaintiff restates and realleges all paragraphs of this complaint as though set out here word for word.

33. Plaintiff brings her claim for violation of the EFAA against Ally on behalf of Plaintiff and the Class.

34. The EFAA was enacted for the purpose of standardizing hold periods on deposits made to commercial banks and to regulate institutions' use of deposit holds.

35. The EFAA states, in pertinent part, that: "[I]nterest shall accrue on funds deposited in an interest-bearing account at a depository institution beginning not later than the business day on which the depository institution receives provisional credit for such funds." 12 U.S.C. § 4005(a).

36. Ally violated the EFAA because, as described throughout this complaint, Ally did not accrue interest on Plaintiff's and Class Members' funds it received via standard ACH transfer for deposit into their interest-bearing Ally accounts starting from the business day it received those funds. Instead, Ally wrongly retained the interest it should have paid to Plaintiff and the Class, which Plaintiff is informed and believes totals millions of dollars.

37. As a direct result of Ally's actions, Plaintiff and the Class have suffered injury because Ally has not paid them all the interest that has lawfully accrued on their applicable Ally accounts.

38. Pursuant to 12 U.S.C. § 4010, Plaintiff and the Class are entitled to all actual damages they have sustained as a result of Ally's failure to pay all the interest that has accrued on their Ally accounts, together with attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**

**UNJUST ENRICHMENT**

39. Plaintiff restates and realleges each paragraph of this complaint as though set out here word for word.

40. Plaintiff brings her unjust enrichment claim against Ally on behalf of the Class.

41. Ally unjustly retained a benefit conferred by Plaintiff and the Class Members when Ally did not pay all of the interest on Plaintiff's and the Class' Ally accounts to which they were entitled.

42. Ally knows of and appreciates these benefits. Ally knows when it receives funds via standard ACH transfer intended for deposit into its customers' accounts. Ally also knows that, in most instances, it does not start paying interest on funds meant for deposit into its customers' interest-bearing Ally accounts until one or more business days after it receives those funds via ACH transfer, to the detriment of Plaintiff and the Class.

43. As a result, Plaintiff and the Class have conferred a benefit on Ally, and Ally has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on them.

44. Ally will be unjustly enriched if it is allowed to retain this benefit. Plaintiff and each Class Member is entitled to an award amount equal to the value of the benefit conferred on Ally and by which Ally has been unjustly enriched.

**RELIEF SOUGHT**

**Damages**

45. Plaintiff asks that this Court order Ally to pay damages to Plaintiff and the Class in an amount to be determined at trial according to law.

**Restitution**

46. Plaintiff has no adequate remedy at law to address the wrongful conduct engaged in by Ally as described throughout this Complaint. Plaintiff asks this Court to fashion an equitable remedy and award restitution to Plaintiff and the Class, by ordering Ally to return all monies and profits Ally has realized from the interest Ally has retained and wrongly failed to pay to Plaintiff and the Class.

**Injunction**

47. Plaintiff has no adequate remedy at law to address the wrongful conduct engaged in by Ally as described throughout this Complaint. Plaintiff asks that this court fashion an equitable remedy by issuing an injunction, ordering Ally to begin paying interest on funds intended for deposit into its customers' interest-bearing Ally accounts on the same business day Ally receives

such funds.

## Attorneys' Fees and Costs

48. Plaintiff and the Classes are entitled to recover their attorneys' fees and costs pursuant to the EFAA, 12 U.S.C. § 4010(a)(3).

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

Dated: July 17, 2018

Respectfully submitted,
LAW OFFICE OF SHERI L. KELLY

By: */s/ Sheri L. Kelly*
      Sheri L. Kelly

Sheri L. Kelly, SBN 226993
E-mail: slk@sherikellylaw.com
LAW OFFICE OF SHERI L. KELLY
31 E. Julian St.
San Jose, CA 95112
Telephone: (408) 287-7712
Facsimile: (408) 583-4249

**Counsel for Plaintiff**